Move to the third case this morning Bowers v. Dart. Mr. Morrissey may it please the court. My name is Patrick Morrissey and I represent the plaintiff appellant Marquis Bowers in this prisoner suit challenge the sheriff's cross-watching policy. The district court held Mr. Bowers presented sufficient evidence to warrant a trial for a violation of his constitutional rights. The district court nonetheless at the summary judgment in the sheriff's favor based on an erroneous finding about the available administrative remedies at Cook County Jail. The starting point in this case is the Prison Litigation Reform Act in the Prison Litigation Reform Act requires inmates to exhaust available remedies. Very recently the Supreme Court in Ross First Lake explained that the text of the PLRA suggests there are no limits on an inmate's obligation to exhaust. The Supreme Court also said in the moment that when administrative procedures are susceptible to multiple reasonable interpretations Congress has suggested that the inmate should err on the side of exhaustion. Pertaining to this claim Mr. Bowers did err on the side of exhaustion insisting with the Cook County Jail's grievance procedure. In this case, your honors Mr. Bowers was told by the sheriff's office that the Office of Professional Review must present findings before an inmate can exhaust available remedies. In this case, we know that OPR interviewed Mr. Bowers in November of 2014. In the same month the sheriff's office interviewed officer Rotar the correctional officer who was assigned to watch the tier. OPR issued written findings in December of 2014 and in the summer of 2015 the OPR investigation completed its command channel review. The sheriff's statement... The argument you're making seems quite at odds with me as to what we held in our 2011 decision in Pavey versus Connolly. And I know how you just try to distinguish that in your briefing but Pavey versus Connolly did not in my view or if you think to the contrary point me to where it does turn upon a question of state law or you know state remedies here. It made pretty clear that in a situation where you have a disciplinary process call it OPR. That's separate and apart or some kind of internal affairs investigation. That's separate and apart from exhaustion requirements imposed upon the inmate. So it seems to me that you unless I mean, how do we get around Pavey? Well, there's two comments regarding that issue. Pavey addressed the state prison system's grievance procedure and in this case the court must look at the Cook County Jail's grievance procedure. Second, Your Honor, the court recently in in Reed Ross versus Blake addressed almost an identical situation. In Ross versus Blake the Maryland prisoner was presented with an inmate handbook about the Maryland prison's grievance procedure. Rather than pursue the grievance procedure with the state institution the prisoner relied on the internal investigative unit that was authorized by state law. And in that case the Supreme Court said that there was a question of fact that they remanded the case to the lower court to determine whether there was that was an available administrative remedy for the prisoner. What passage in the Cook County grievance procedures do you have in mind that directs someone like Mr. Bowers to exhaust OPR processes before filing a lawsuit in court? Your Honor, there is no specific. The inmate grievance procedure at Cook County Jail is vague with this in this sense. The grievance procedure in response to Mr. Bowers' second grievance, the grievance officer, the director of the grievance procedure told Mr. Bowers that OPR was investigating the matter and in fact the evidence in the record. That's often going to be the case. That that's that's completely common. In this case, Mr. Bowers was told that OPR was investigating the matter in it. Also, Your Honor, I don't understand. I don't understand what you're saying. That's that's going to happen every day. A grievance is going to be filed about medical care or or you know, some interaction with the guards. OPR may take a look at officer conduct. It's it goes hand in glove. I don't understand what that has anything to do with exhaustion and how you get around what we said in Pavey versus Connolly on this point. Because because the PLRA deals with the inmate and and a requirement that the inmate exhaust before going to court, but that doesn't mean that there can't be separate mechanisms that a facility has in place to deal with a guard who may have engaged in misconduct or something like that. Your Honor there. The grievance procedure didn't have any available. They didn't weren't able to provide any outcome to Mr. Bowers for his complaint. The evidence in the record shows that they delegate everything to the Office of Professional Review regarding misconduct by staff. And so that is a distinction, Your Honor. With respect to guard discipline. Is that what you're talking about? Yes, Your Honor. The commander said that the through the grievance procedure, they are not able to address allegations and misconduct once it is forwarded to OPR. So once that matter was forwarded to OPR, it was outside the hands of the procedure. In addition, Your Honor, the sheriff's office represented to the court in a pleading that an inmate must wait for OPR to return a finding before exhausting available remedies. So that is a distinction in this case, Your Honor. So while the Office of Professional Review was investigating this matter, the statute of limitations should have been told and should make this claim timely by Mr. Bowers against the sheriff's office. Turning to the second issue on appeal is the complaint that Mr. Bowers has against the individual employees of the sheriff's office. There is no dispute in this case that upon receipt of that grievance, the first grievance from January of 2013, this was forwarded to the Office of Professional Review. The sheriff's OPR investigator, Ms. Tia Parks, who's also an attorney, said that that grievance was the initiating document. The OPR office opened an investigation specifically to address the question whether Officer Rotar failed to protect Mr. Bowers on December 31st, 2012. The district court's erroneous understanding of the implication of that grievance led the district court to dismiss the claims against Officer Rotar and the individual defendants on the belief that the sheriff's office did not have a notice of wrongdoing. And the evidence in the record shows that the sheriff's office had clear notice that Mr. Bowers was complained of wrongdoing by individual defendants of the sheriff's office and the sheriff's office failed to present meet its burden at summary judgment, that exhaustion was appropriate in favor of the individual defendants. Turning to the final issue on this appeal, it concerns a claim that Mr. Bowers presented at trial. Several years ago, Judge Gettleman reviewing Mr. Bowers' situation at the Cook County Jail covering the same time period held that Mr. Bowers was a qualified person with a disability because he was a wheelchair user because he was regarded by the sheriff's office as needing a wheelchair to move from place to place. The district court erred by allowing the jury to determine whether Mr. Bowers was a qualified person with a disability. The issue of disability was fully litigated in the lower court. And it was actually... Does our holding on appeal and Lacey have any bearing upon this because your description of the district court activity in Lacey seems to entirely disregard what happened on appeal. Your Honor, on appeal, the defendants presented the same arguments that's on appeal in this case about disputes about whether Mr. Bowers is a qualified person. We held on appeal in Lacey that it was error for the district court to afford preclusive effect to findings. Yes, Your Honor. And why aren't you discussing that in your briefs? Is Lacey a case you have familiarity with? Yes, Your Honor. I argued with Lacey. And in Lacey, it was... I understand, Your Honor. We reversed on the very point that you're urging us to endorse here. Yes, Your Honor. And I apologize, Your Honor. But at trial in Bowers before Judge Shaw, the only evidence presented to the jury was against the sheriff's office. And the evidence was in accord that the sheriff's office regarded Mr. Bowers as a wheelchair user. And because the sheriff's office relied on the county medical staff to issue alerts for using a wheelchair. In addition, Your Honor, the medical evidence by the treating physician, Dr. Andrew Defounia, who evaluated Mr. Bowers approximately 25 times, he testified that Mr. Bowers is... Mr. Bowers was too weak to ambulate. The district court disregarded arguments and allowed that issue of the jury based on the credibility determination of Mr. Bowers. And we believe because the evidence was so lopsided on the issue of disability, allowing that issue to be presented to the jury about disability was an error. The court doesn't have any additional questions. I wish to reserve the remaining time. For a moment. Thank you, Mr. Morrissey. Mr. Gorman. May it please the court. Assistant State's Attorney Michael Gorman on behalf of the defendant appellees. This is an appeal from two district court decisions granting summary judgment for the individuals in this case and for Sheriff Dart, respectively. The... The failure to protect claim against the individual defendants was rightfully decided as the plaintiff clearly failed to provide the requisite notice under the PLRA to the Cook County Jail for his failure to protect claim. This is also an appeal from the jury verdict in favor of the Sheriff and that decision was correctly made based on the plaintiff's failure to demonstrate at trial that he was a qualified individual under the ADA and also that the Sheriff was deliberately indifferent. Lastly, regarding the now claim against Sheriff's office that was properly barred based on the statute of limitations as the plaintiff failed to file in a timely manner filing this claim for the first time in 2016 over a year since the statute of limitations would have expired for that claim. Turning first to the jury verdict in favor of the Sheriff as as the plaintiff is claiming now, Dr. Defunyak testified at trial that the plaintiff's injuries would not have been consistent with those that would cause paralysis. A neurosurgeon, Dr. Raxson, who treated the plaintiff shortly after his injury in the December 31st fight, similarly testified that her review of the MRI scans and the CT scans was not consistent with an injury that would cause paralysis. In fact, the only person that testified at trial that he was unable to walk was the plaintiff. Plaintiff also pointed to testimony by Dr. Defunyak observing some some level of weakness that Dr. Defunyak observed from the plaintiff during subjective tests. Dr. Raxson testified similar to similar tests and found a clear lack of voluntary effort on the plaintiff's part. Further, the plaintiff then went on to refuse any testing that could clarify his claimed inability to walk and Dr. Defunyak kept track of those refusals as he found it noteworthy. Lastly, the plaintiff finally said to a medical provider that he did not want any further treatment for his back because he had a quote federal lawsuit against everyone and this was testimony that the jury heard that the plaintiff confirmed at trial and when asked to explain that testimony, he said that is what I said not in exactly those words, but that was the gist of it and further that he didn't want any treatment from Cook County because there was a conspiracy against him from Cook County generally. He also testified that he was in fact moving his legs in the video taken immediately after the fight which contradicted his claim of being unable to use his legs and as to the weakness that Dr. Defunyak observed that would be expected based on the fact that he was in fact using a wheelchair for several years while at Cook County Jail. However, that doesn't go to whether or not he was able to walk. Plaintiff also pointed to the Lacey decision claiming that that was conclusive evidence that that the sheriff's office had regarded Mr. Bowers as disabled. However, as Judge Scudder properly pointed out that decision was reversed on appeal and this court found that the District Court had improperly substituted their own finding of facts for those that should have been determined by a jury as it was here and this did come down to a credibility determination as to whether or not the plaintiff was actually disabled and the jury had ample evidence to support a finding that the plaintiff was not disabled. In fact, clearly there were other reasons that a medical provider could have inputted the alert that the sheriff's office abided by including Dr. Defunyak the one who wrote the order himself, which is that he gave him this wheelchair based on his claimed inability to walk his own subjective complaint and the jury correctly found that he was not a qualified individual under the ADA or that the sheriff's office was not deliberately indifferent. Turning to the other the other issue, which is whether the sheriff's office was deliberately indifferent to his needs. Evidence of trial showed that when available the plaintiff was placed in cells with ADA specifications that were compliant. That was the uncontroverted testimony at trial by the ADA coordinator and further that while he was in CIRMAC during the relevant time period for this complaint, he was provided with 24-hour access to nurses to assist him in his daily needs. He was also provided a shower chair and a toilet chair to assist him with his toileting and showering needs and all of these things point to the fact that the sheriff's office was not deliberately indifferent. The sheriff could read there's pardon me. The jury could reasonably conclude that the sheriff's office was not deliberately indifferent. And finally, there was also even a task force that was compiled of sheriff's office personnel to address ADA concerns for those that suffer from disabilities leading to the creation of the ADA coordinator position who testified at trial. Mr. Corman, can you spend a minute on the point that Mr. Morrissey made about the OPR process and how that bears upon exhaustion? Yes, absolutely. As your Honor correctly pointed out, the PLRA exhaustion requirement is focusing on the remedies that are available to the detainee. In this case, OPR is not a is not a remedy that is available to the detainee. Rather, it's an internal review process that the sheriff's office would take on similar to internal reviews as was discussed in Pavey v. Connolly. In this case, the plaintiff exhausted his administrative remedies when he filed his appeal of the grievance. That's where his remedies ended on his for what he could do. What the sheriff's office did with his complaint is another matter altogether. And it's very clear that in this particular case, he had exhausted his administrative remedies at that point. Mr. Corman, is there anything in your view about dependency of an OPR internal affairs inquiry that would preclude Cook County from affording administrative relief to an inmate? No. That's Mr. Morrissey's point is that the moment an OPR inquiry begins, administrative relief is an impossibility. Well, at that point, he had already exhausted his administrative remedies. So what OPR did with that? The point is once OPR concludes this investigation, there's nothing for the plaintiff to do. Plaintiff is not involved with that process at all. So as far as the analysis goes to exhaustion, he had already complied with the PLRA when he had appealed his grievance in this matter. My understanding is that OPR doesn't really have much to do with the inmate at all. Is that the OPR process is about whether a correctional officer complied with her or his responsibilities, engaged in any misconduct, etc. That is correct. It's an internal review process that goes to investigate officer misconduct. It does not have any effect on the plaintiff. And for that reason, the failure to protect claim was pardon me, the Minnell claim was found to be properly exhausted. However, with regard to the failure to protect claim, that's another matter. And the key component in that analysis is the fact that the that the plaintiff pled an entirely different claim than than what could be made out most liberally construed from his grievance. His grievance simply said that he was in a fight December 31st, 2012, and he was attacked by several inmates and perhaps officer Rotter did not respond as promptly to his cries for help. However, the claim that he later brought in federal court in the 2014 case and the 2016 case was that each one of these individuals were notified of some threat to his safety and each one had the power to transfer him out of his cell and none of them did contrary to that. These are entirely different claims, not just of degree, but of kind. And for that reason, it was clear that he had failed to exhaust his administrative remedies as he failed to provide the requisite notice pursuant to the PLRA to the institution in order to give them the opportunity to remedy his claim. And lastly, regarding the manel claim plaintiff also is putting forward the theory that somehow an untested argument that was proffered as a potential means for a summary judgment motion in the 2014 case should somehow be binding upon the sheriff's office in the 2016 case. The manel claim was not even in existence during dependency of the 2014 case. It was a wholly new claim that was brought in the 2016 case. It would not have a preclusive effect. It wasn't even an argument that was brought to the district court rather. It was just proffered and for all those reasons that manel claim was properly barred by the statute of limitations. Finally, regarding the pardon me, just getting back briefly to the jury verdicts in favor of the sheriff's office. It was clear from the testimony at trial that the plaintiff was not actually disabled that he was not regarded as disabled and he definitely did not have an at a record of a disability which would be the third means in order to qualify under the ADA and as the regarded as prong would go it was clear that the medical evidence showed that Dr. Defuniac had issued this order based solely on the plaintiff's subjective complaint of being unable to walk and that the sheriff's office abided by that. And so even if the even if the sheriff's office was somehow links to the medical provider in a way that would consider them regarded as that's it's clear that the finding by the medical provider themselves was not necessarily that he was regarded as this came down to a credibility determination and the jury had the opportunity here from the plaintiff and they had ample evidence to conclude that the plaintiff was a malingerer and not actually disabled under the ADA. So he would not have been entitled to the product protections of the ADA, even if he was regarded as disabled. However, even if he was regarded as disabled, it was clear that the sheriff's office was not deliberately indifferent. They did the best they could to accommodate the plaintiff, even though they could not make structural changes to increase the number of cells with ADA specifications when they were available. He was provided such a cell and he could not have been transferred to other divisions as the ADA coordinator testified be due to his classification as a dangerous inmate. So they provided him with 24-hour nursing care. They provided him with a pardon me, a toilet chair and a shower chair and did the best they could to accommodate him and that was ample evidence to show that the sheriff's office was not deliberately indifferent. So if there are no further questions, we would ask that this panel affirm the decisions of the district court below and the finding of no liability by the jury for Sheriff Dart because the sheriff was not deliberately indifferent and the plaintiff failed to demonstrate that he was a qualified individual under the ADA. The mental claim was properly barred by the statute of limitations and the plaintiff failed to exhaust his administrative remedies by failing to provide notice to Cook County Jail of the wrong that he later claimed in his federal lawsuit. Thank you. Thank you. Mr. Gorman. Mr. Morrissey. Yes, your honor. There's a dispute about the involvement of OPR pertaining to the grievance procedure at the Cook County Jail. Page 12 and 13 of the plaintiff's opening brief except 11 and 12 of the opening brief explains how misconduct allegations are forwarded to OPR based on detaining grievances in that complete authority is vested with OPR to investigate these allegations. The director of the inmate grievance procedure also explained that inmates do have involvement when OPR is delegated to investigate a matter. Director Olson said an inmate may supplement a matter forwarded to OPR and after OPR conducts its investigation Commander Cozzolino said that the inmate is presented with the findings Commander Cozzolino also said that an inmate unsatisfied with OPR's findings may has a right to an appeal. And in fact that understanding I believe led the sheriff's attorney to make the representation in the first case that OPR is part of the administrative process available for detaining at Cook County Jail. The Supreme Court in Blake in 2000 in Ross versus Blake explained availability and the Supreme Court says availability means capable of use for the accomplishment of a purpose in that which is accessible or may be obtained. The court went on to say accordingly an inmate is required to exhaust those but only those grievance procedures that are capable of being capable of use to obtain some relief for the action complained of and in this case the plaintiff presented evidence to overcome the defendant's summary judgment motion about the role of OPR in his grievance and the plaintiff was fully aware of OPR's involvement in this case because of his second grievance where he complained about the same event. Thank you. In the grievance procedure your honors only talks about a prisoner at Cook County Jail complaining of an offense. In this requirement is explained explicitly on the inmate grievance for and Mr. Bowers adequately placed the sheriff's office on notice about the events that he complained of that led to his serious injury. There was no requirement for Mr. Bowers to plead about a specific claim for relief or a theory of liability for the wrong. We respectfully request that this court remand this case the district court  consideration of plaintiff's claims on the merits because he did exhaust available administrative remedies. In addition, we asked the court to remand this case for a new trial regarding Mr. Bowers's claim under the ADA. Thank you. Thank you, Mr. Morrissey. Thanks to both counselors. Counsel and the case is taken under advice.